IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jason Frazier | |
| 226 West Taylor Street | Case No.: |
| Taylor, PA 18517 | |
|     Plaintiff | |
| | |
|     vs. | Jury Trial Demanded |
| Geisinger Marworth | |
| 12 Lily Lake Rd | |
| Waverly, PA 18471 | |
| | |
| and | |
| | |
| Geisinger Health System | |
| 175 Northumberland St. | |
| Danville, PA 17821 | |
|     Defendants | |

COMPLAINT

1. INTRODUCTION

1. This verified Complaint is brought by Plaintiff, Jason Frazier, through his attorney, and avers as follows:

2. (A) On or about May, 2025, Plaintiff filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC). Plaintiff and his counsel never received a right to sue letter electronically or via Unted States mail regarding charges of discrimination earlier filed with the EEOC.

1

The EEOC states that a right to sue letter was issued, but Plaintiff and his counsel never received notice concerning issuance of a letter.

(B) In the third week of December 2025, Counsel contacted the EEOC and requested information about the status of the EEOC investigation and was informed a right to sue letter had been issued.
Neither Plaintiff or his counsel had any knowledge of this claim before that date. Thereafter, the EEOC sent no copy of the alleged right to sue letter to Plaintiff or counsel.

(C) In light of these circumstances, Plaintiff now files this Complaint in the matter to include claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e (Title Vll), Americans with Disabilities Act, 42 U.S.C. 512101 et seq. (hereinafter ADA), Americans with Disabilities Amendments Act, 42 U.S.C. 512101 et seq. (hereinafter ADAAA), and the Pennsylvania Human Relations Act, 43 P.S. "951-963 (hereinafter PHRA).

(D) Plaintiff alleges damages in excess of $150,000.00.

## 11. JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. 51331 and 28 U.S.C. 51343. Federal question jurisdiction arises under 42. U.S.C. 51983, and 29 U.S.C. §§ 701 et seq.

111. VENUE

4. Venue is proper pursuant to 18 U.S.C. 51391, because the events underlying this complaint arose within the Middle District of Pennsylvania.

IV PARTIES

5. Plaintiff, Jason Frazier, is a 48-year-old, African American, male, who is disabled. He is the father of two children, and resides in Taylor, PA 18517.

6. Defendant, Geisinger Marworth, is an addiction treatment facility located at 123 Lily Lake Rd., Waverly, PA 18471. On information and belief, it is owned and operated by Defendant, Geisinger Health System and has more than 50 employees

7. Defendant, Geisinger Health System is an entity that in Northeastern and Central Pennsylvania, operates numerous health care facilities, including Geisinger Marworth, primarily. It is located at 175 Northumberland St., Danville, PA 17821 and has more than 50 employees.

8. Defendants are both employers and public accommodations subject to the provisions of the Pennsylvania Human Relations Act (PHRA), 43 P.S. "951-963, as well as Title Vll ofthe Civil Rights Act of 1964. 42 U.S. Code 2000e. They each employ more that 50 employees.

## IV. FACTUAL BACKGROUND

9. Plaintiff was employed at Geisinger Marworth from August 23, 2023 to August 8, 2024.

10. Geisinger Marworth at the time of Plaintiffs employ had greater than 50 employees. On information and belief, only one other employee was African American and worked in Admissions, a different department.

11. Mr. Frazier is a graduate of the Luzerne County Community College, where he earned 25 credits in addiction recovery as well as additional credits in Human Services, culminating in an Associate's Degree in Human Services.

12. After graduating, Mr. Frazier became a paid Intern at Geisinger Marworth. He worked as an Intern from approximately August 1, 2023 until May of 2024, when he was promoted by Geisinger Marworth as a Chemical Dependency Specialist. He was and remains qualified for this position.

13. During his employment, Mr. Frazier participated in focus groups and received "high acclamations," and was never disciplined before his termination.

14. In April, 2024, Plaintiff's son became critically ill following treatment at a result at a Geisinger facility.

4

15. Thereafter, Plaintiff was transferred to a Philadelphia hospital for treatment. As a result Plaintiff was forced to travel frequently to Philadelphia to see his son causing Plaintiff enormous stress.

16. Plaintiff sought and was denied Family and Medical Leave Act of 1993, 29 U.S.C. 9601 et seq. (hereinafter FMLA) leave, due to ineligibility because of his length of employment, and repeatedly met with Respondent's Supervisor for Behavioral Health Technician, Jason White (who is white), about the enormous stress he was facing. In connection with his FMLA request, Plaintiff requested reasonable accommodations. On behalf of Defendants, response through Jason White offered to speak with Plaintiff about his circumstances, presumably in an effort to accommodate him. This was the only accommodation offered by Defendants.

17. Plaintiff subsequently sued Defendants on behalf of his son for medical malpractice. The case was settled. The amount of the settlement, which was substantial, is subject to a confidentiality agreement.

18. (A) On August 1, 2024, at approximately 2:45 p.m. Plaintiff was approached by a white colleague "Robert Kerns". Mr. Kerns was and is not a supervisor. Instead, he was an employee of similar status to Plaintiff.

    (B) Robert Kerns questioned Plaintiff as to why he was not downstairs monitoring Art Therapy. This question was posed in front of

5

other work colleagues and implicated Mr. Frazier's professional competency.

(C) Plaintiff replied that he had to complete the "Facility Sweep", a required search of all rooms and bathrooms to make sure no one had harmed themselves This occurred at 2:45PM. Plaintiff had been assigned to conduct the Facility Sweep the "morning", the meeting in which employees are assigned their duties.

(D) Plaintiff then walked away from Mr. Kerns. After completing his job duties, he noticed Mr. Kerns talking with another white person near one of the offices. Plaintiff then asked Mr. Kerns, consistent with the National Organization for Human Resources Code of Ethics standards, to step into the office with him with someone else, Plaintiff believed to be a neutral person. The person Plaintiff asked to be the third person in the conversation was "Mike S [last name unknown]." Unbeknownst to Plaintiff, Mike S and Robert Kerns are close friends.

(E) Once inside the office, Plaintiff asked Mr. Kerns why he harassed Plaintiff about his job duties. Mr. Kerns replied that in the past he was not capable of finding Plaintiff in the building. Plaintiff replied "Why did you not just use the walkie talkies that we are supposed to carry during shift?" He then pulled his walkie talkie out to show Kerns, who was not

carrying one. Plaintiff also told Mr. Kerns, words to the effect, that moving forward that Kerns should not pull Plaintiff aside and discuss any work concerns that Mr. Kerns had because it was inappropriate to do so in front of other employees. The discussion ended and Plaintiff left the office.

(F)  Plaintiff then went in to speak with his Department Supervisor, Jason White, about the situation. Mr. White, who is Caucasian, told Plaintiff he would speak to Kerns about the circumstances. This occurred on August l, 2024.

(G)  Sometime later that day, Plaintiff was called into Mr. White's, office and told that a "Midas report" had been filed against him. Plaintiff did not know what a Midas report was. White then told Plaintiff was told he was being investigated for workplace violence.

(H)  Plaintiff has never engaged in workplace violence and denied doing so to Mr. White. He simply had a discussion with Kerns and Mr. Mike S.

(1) Still later that day, Mr. White brought Plaintiff in to do a video disposition with a Human Resources Representative to give his side of the story.

Two days later Mr. White brought Plaintiff back in to tell him that because Plaintiffs story did not match the story of the

other two people (Mr. Kerns and Mr. S), that Mr. Frazier was being terminated and had to turn in his badge immediately. Plaintiff was then taken to an office to retrieve his possessions and escorted to the door. Prior to this situation, Plaintiff was never given a verbal or written warning for any misconducts at work.

(K)     During this time, Plaintiff interacted with Mr. Kerns who showed no fear or discomfort in interacting with Mr. Frazier.

(L)     Plaintiff was never given a copy of Defendant's policies on workplace violence during the investigation.

(M)     In addition, during Plaintiff's final conversation with the human resource representative, he never actually said Plaintiff was being fired for workplace violence. Instead the Human Resources representative just said that Plaintiffs story did not match with that of white employees "Mr. Kerns and Mr. S" and Defendants would have to let Plaintiff go.

19. Plaintiff worked as a Chemical Dependency Specialist until he was terminated on August 8, 2024.

20. About one week prior to Mr. Frazier's termination there was a verbal confrontation between the department supervisor, Jason White, a white male and Clinical director Dr. Fitzgerald, a non-disabled white female, which

made everybody feel uncomfortable. Afterward, the Dr. Fitzgerald went to the CEO because she felt that White's actions violated the Workplace Violence

Policy. However, nothing was ever done about this situation. This is a clear indication that Defendants do not enforce the Workplace Violence Policy uniformly with respect to employees having a disability or of different races.

21. Plaintiff is also aware of another similarly situated non-disabled white employee named Don Luongo, who had a loud dispute with someone which resulted in him being discipline.

22. On information and belief, Don Luongo received only a verbal warning because of this incident.

23. Plaintiff was terminated based upon race and disability discrimination.

24. Plaintiff suffered damages in the loss of wages and emotional distress.

25. The EEOC was requested to cross-file these proceedings with the Pennsylvania Human Relations Commission (PHRC). There is no evidence that it did so.

## COUNT ONE

## RACE DISCRIMINATION

26. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

27. Plaintiff is an African American male.

28. The facts stated above establish that Plaintiff was treated in a discriminatory manner by Defendants because of his race.

29. Plaintiff suffered damages in the form of loss of wages, injury to his reputation, and emotional pain and suffering caused by Defendants' actions.

## COUNT TWO

## DISABILITY DISCRIMINATION

30. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

31. Plaintiff is a disabled African American male.

32. The facts stated above establish that Plaintiff was treated in a discriminatory manner by Defendants because of his disability.

33. Plaintiff was known by Defendants to have requested accommodations from Defendants.

34. Defendant terminated Plaintiff in retaliation for his need for reasonable accommodations.

35. Plaintiff suffered damages in the form of loss of wages, injury to his reputation, and emotional pain and suffering caused by Defendants' actions.

## COUNT THREE

## RETALIATION DISCRIMINATION

36. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

37. Plaintiff is a disabled African American male.

38. The facts stated above establish that Plaintiff was treated in a discriminatory manner by Defendants because of his race and disability.

39. Plaintiff was known by Defendants to have requested accommodations from Defendants.

40. Defendants terminated Plaintiff in retaliation for his need for reasonable accommodations and/or because of his race.

41. Plaintiff suffered damages in the form of loss of wages, injury to his reputation, and emotional pain and suffering caused by Defendants' actions.

PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFF PRAYS FOR THE FOLLOWING RELIEF:

A    A jury trial on all appropriate issues;

B.    Damages for lost wages and for pain and suffering in excess of $150,000.00.

C.    An award of attorneys' fees, costs and expenses against Defendants.
D.    Any and all other relief this Court may deem appropriate.

Respectfully submitted,

January 14, 2026

St he V. Ya

Il

Pa. Id. No.: 33 60 1101
Evergreen Rd.
Reading, Pa. 1961 1
(610) 664-7883
(610) 664-7884 (fax) (610) 716-0091 (cell)
steve@.yarnellemplo.ylnentlaw.col
n

Attorney for Plaintiff

Jason Frazier
78 Kennedy Blvd.
Scranton, PA 18504        Case No.: Plaintiff

      vs.

Geisinger  Marworth
12 Lily Lake Rd
Waverly,   PA   18471

      and

Geisinger Health System 175
Northumberland St.
Danville, PA 17821
        Defendants

---

## VERIFICATION

I, Jason Frazier, hereby verify that I am the charging party with respect to the forgoing Complaint. The facts stated therein are true to the extent of my knowledge, information and belief.

      I understand that any false statements made herein are subject to the penalties of 18 Pa. C.S.A. 54906 regarding false statement made to authorities.

Dated:    ICI-Q5                      *Jason Frazier*
                J son Frazier